UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

CONG HUYNH and HUONG HUYNH,          )
husband and wife,                    )    NO.  CV-08-3014-LRS
                                     )
                Plaintiffs,          )
                                     )    ORDER GRANTING DEFENDANTS'
     -vs-                            )    MOTION FOR SUMMARY JUDGMENT IN
                                     )    PART AND DENYING IN PART
CITY OF UNION GAP, a municipal       )
corporation, and LARRY WORDEN        )
and JANE DOE WORDEN, husband and     )
wife,                                )
                                     )
                Defendants.          )
_____)

     BEFORE THE COURT is Defendants' Motion for Partial Summary Judgment,

Ct. Rec. 21, filed March 25, 2009, and noted without oral argument.  The

City of Union Gap ("Defendant City") has moved for partial summary

judgment dismissing the claims in this action commenced against it

pursuant to 42 U.S.C. § 1983: 1) all claims of Plaintiff Cong Huynh

against the Defendant City; 2) all claims that Plaintiff Cong Huynh was

unreasonably seized and unlawfully arrested in violation of the Fourth

Amendment; 3)all claims that Plaintiff Cong Huynh was not informed of the

nature and cause of the accusations in violation of the Sixth Amendment;

4) all claims that Plaintiff Cong Huynh was deprived of medical treatment

while in custody; and 5) all claims against Defendants City of Union Gap,

Larry Worden and Jane Doe Worden arising from or pursuant to state law.

ORDER - 1

**I. FACTUAL BACKGROUND**

   **A. Events Surrounding Cong Huynh's September 2005 Arrest**

   Defendants' Version

   On September 16, 2005, Defendant Larry Worden, a Union Gap Police Officer, was contacted by Cameron Melcher of Cam Melcher Auto Repair. Mr. Melcher explained that he had leased a repair shop space under a five year contract and that the landlord, Plaintiff Cong Huynh, had locked him out after being four days late on rent. Worden Decl., ¶5. Melcher requested Defendant Worden do a civil standby while he contacted Plaintiff Cong Huynh to attempt to recover his property that was locked inside. Defendant Worden advised Melcher to contact his landlord to try to obtain his property without police involvement as it was department policy not to do civil standbys. Id.

   Melcher returned to the police department later that day stating to Defendant Worden that Plaintiff Cong Huynh told him that his property, valued by Melcher at more than $6,000,[1] now belonged to him (Huynh) because Melcher had not paid his rent. Melcher told Defendant Worden that Plaintiff Huynh also demanded three months rent in advance before he would release the property to Melcher. Id. at ¶6. Melcher and Defendant Worden met shortly thereafter with Plaintiff-landlord in the hope that the matter could be resolved and investigation and possible charges avoided. Defendant Worden told Plaintiff Huynh that if he did not let Melcher retrieve his property, he was going to write an

_____

   [1]The property at issue are 2 MATCO hoists.

ORDER - 2

investigative report regarding a possible theft charge against Plaintiff. Id. at ¶7.

Plaintiff Huynh continued to refuse to allow Melcher access to his property so Defendant Worden asked Plaintiff for "ID." Defendant Worden repeated this request each time Plaintiff Huynh responded "no." Defendant Worden told Plaintiff if he did not provide his "ID" he would be arrested.[2] Id. Defendant Worden then advised Plaintiff Huynh that he was under arrest and attempted to handcuff Plaintiff, which resulted in a struggle between Defendant Worden and Plaintiff Huynh. Id. at ¶8-9. Defendant Worden states that he repeatedly instructed Plaintiff to cooperate and not to resist. Defendant Worden found it necessary to threaten to pepper spray Plaintiff Huynh in order to cause Huynh to not resist being handcuffed. Each time Plaintiff would stop his resistance, he would resume it when Defendant Worden tried to handcuff him. Id. at ¶9. Defendant Worden denies suddenly grabbing Plaintiff's head and smashing it down on a desk, as Plaintiff claims in his version of events. According to Defendant Worden, the cause of Plaintiff Huynh's head hitting the desk was the result of his resisting Worden's efforts to handcuff him. Id. at ¶8.

Plaintiff Huynh was charged with resisting arrest and obstructing justice. Id. at ¶¶2, 4. It was found that Plaintiff did have

---

[2]Defendant Worden states his purpose in requesting Plaintiff's identification was for an investigative report. Proper identification would also be critical if a warrant for Plaintiff's arrest were issued. Worden Decl., ¶7.

ORDER - 3

identification (name, driver's license number, address, birth date, and other descriptive information) at the time of his arrest, which enabled Defendant Worden to complete a citation. Id. at ¶10. These charges were, however, dismissed without prejudice prior to a trial. See Answer, Ct. Rec. 3.

The injury that occurred to Plaintiff at the time of his arrest, a golf ball size lump on his left cheekbone, was treated at the scene of the arrest, within 15 minutes of his injury. After being processed and pictures taken at the Union Gap Police Department, Plaintiff was taken to Yakima Regional Medical Center for further medical aid, within the same hour that his injury occurred. Id. at ¶10; Beyer Decl., ¶2; Huynh Decl., p. 32.

Plaintiffs' Version

Plaintiffs do not dispute the events leading up to the arrest except in the following aspects. Plaintiff Huynh states that Defendant Worden became agitated when he [Plaintiff Huynh] asked Worden for a copy of a court order. Plaintiff also states that he understood Defendant Worden to be requesting a "key" rather than "ID." Plaintiff Huynh states that Defendant Worden suddenly grabbed his head and smashed it down on a desk and then the struggle ensued. Huynh Dep., pp. 29-30; 33-34. Plaintiff states that Defendant Worden stepped on his head two or three times while he was on the floor. Plaintiff also states that he believed, as a landlord, he had a lien right to the two MATCO hoists that Melcher maintained in the leased building, based on Melcher's failure to pay rent

ORDER - 4

and his abandoning the leased premises.

## II. SUMMARY JUDGMENT STANDARD

Under Fed.R.Civ.P. 56(c), summary judgment is authorized if no genuine issue exists regarding any material fact and the moving party is entitled to judgment as a matter of law. The moving party must show an absence of an issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party shows the absence of an issue of material fact, the non-moving party must go beyond the pleadings and designate specific facts showing a genuine issue for trial. Id. at 324, 106 S.Ct. 2548. A scintilla of evidence, or evidence that is merely colorable or not significantly probative, does not present a genuine issue of material fact. United Steelworkers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1542 (9th Cir.1989).

The substantive law governing a claim or defense determines whether a fact is material. T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.1987). The court must view the inferences drawn from the facts in the light most favorable to the non-moving party. Thus, reasonable doubts about the existence of a factual issue should be resolved against the moving party. Id. at 630-31. However, when the non-moving party's claims are factually implausible, that party must come forward with more persuasive evidence than would otherwise be required. California Architectural Bldg. Prods., Inc. v. Franciscan Ceramics Inc., 818 F.2d 1466, 1470 (9th Cir.1987), cert. denied, 484 U.S. 1006, 108 S.Ct. 698, 699, 98 L.Ed.2d 650 (1988).

ORDER - 5

The Ninth Circuit has stated, "No longer can it be argued that any disagreement about a material issue of fact precludes the use of summary judgment." Id. at 1468. Plaintiff must ultimately persuade the Court in opposing summary judgment that he will have sufficient admissible evidence to justify going to trial.

In deciding a motion for summary judgment, the court resolves all ambiguities and draws all inferences in favor of the nonmoving party. However, "bald assertions" completely unsupported by evidence will not withstand a properly supported motion for summary judgment. Carey v. Crescenzi, 923 F.2d 18, 21 (2d Cir.1991). Nonetheless, if the claim "turns on which of two conflicting stories best captures what happened," the movant is not entitled to summary judgment. Saucier v. Katz, 533 U.S. 194, 216 (2001) (Ginsburg, J., concurring).

## III.  DISCUSSION

### Section 1983 Claims--Qualified Immunity

Defendants contend the doctrine of qualified immunity shields them from plaintiff's § 1983 claims. Qualified immunity shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Qualified immunity protects "all but the plainly incompetent or those who knowingly violated the law." Malley v. Briggs, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986). "Where an official could be expected to know that

ORDER - 6

certain conduct would violate statutory or constitutional rights, [the official] should be made to hesitate...." Harlow, 457 U.S. at 819, 102 S.Ct. 2727.  However, where an official acts in an area where "clearly established rights are not implicated, the public interest may be better served by action taken 'with independence and without fear of consequences.'"  Id.

In Saucier v. Katz, supra, the Supreme Court clarified the several stage process for determining whether the qualified immunity defense applies. Saucier v. Katz, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).  First, the Court is to decide whether taken in the light most favorable to the party asserting the injury, the facts alleged show the officer's conduct violated a constitutional right.  Id.  If plaintiff fails to conclusively establish a constitutional violation, the inquiry ends and the state actors are immune from suit.

Next, the Court must proceed to determine whether the constitutional right in question was "clearly established" such that "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  Id. at 201-02, 121 S.Ct. 2151.  If the right is not clearly established, the individual public officials are entitled to qualified immunity if a reasonable official could have believed that his or her conduct was lawful.  Thompson v. Souza, 111 F.3d 694, 698 (9th Cir.1997).  To be clearly established, the law must be "sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640, 107

S.Ct. 3034, 97 L.Ed.2d 523 (1987)); see also Groh v. Ramierez, 540 U.S. 551, 124 S.Ct. 1284, 157 L.Ed.2d 1068 (2004).

Once these requirements are found to have been satisfied, the inquiry proceeds to another, closely related issue, that is, whether the officer made a reasonable mistake as to what the law requires. Saucier emphasized that the inquiry for qualified immunity eligibility is distinct from establishment of a constitutional violation of excessive force. As the Court explained, "[t]he concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular police conduct...[i]f the officer's mistake as to what the law requires is reasonable, however, the officer is entitled to the immunity defense." Saucier, 533 U.S. at 205, 121 S.Ct. 2151.

"[W]hether an official protected by qualified immunity may be held personally liable for allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action." Anderson v. Creighton, 483 U.S. 635, 639, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)(quoting Harlow, 457 U.S. at 819, 102 S.Ct. 2727); Bingham v. City of Manhattan Beach, 341 F.3d 939, 950 (9th Cir.2003). "Even law enforcement officials who 'reasonably but mistakenly conclude that probable cause is present' are entitled to immunity." Hunter, 502 U.S. at 227, 112 S.Ct. 534; Bingham, 341 F.3d at 950. After a defendant properly raises qualified immunity in his or her defense at the summary judgment stage, the burden is on the plaintiff to produce evidence sufficient to create a genuine issue of material fact whether defendant

engaged in conduct alleged to have violated a clearly established right.

A.    Claims Against Defendant City

Defendants move to dismiss all claims against the Defendant City of Union Gap.  The City cannot be held liable under § 1983 solely under a theory of respondeat superior.  Monell v. New York Department of Social Servs., 436 U.S. 658, 691 (1978).  In order for the Plaintiffs to impose § 1983 liability on the City, it must identify an official municipal policy or widespread municipal custom that caused his or her injuries.  Bd. of County Comm'rs v. Brown, 520 U.S. 397 403-04 (1997).  For purposes of § 1983 liability, the Trevino court explained municipal custom:

> The custom must be so "persistent and widespread" that it constitutes a "permanent and well settled city policy." [citations omitted].  Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out that policy. [citations omitted].

Trevino v. Gates, 99 F.3d 911, 918 (9th Cir.1996).

Defendants argue, and this court agrees, that the events surrounding the arrest of Plaintiff constituted an isolated incident, unrelated to any official policy or widespread custom of the City.  Therefore, in the absence of other evidence of a permanent, well-settled policy, the claims alleged cannot give rise to municipal liability.  Plaintiff has failed to identify any policy or widespread custom that caused his alleged injuries.  As such, the claims against the Defendant City are dismissed.

ORDER – 9

B.    Fourth/Fourteenth Amendment Violation Claims–Unlawful Seizure
and Arrest

Plaintiff claims that he was unreasonably seized and unlawfully arrested in violation of the Fourth and Fourteenth Amendments. Defendants assert that Defendant Worden is entitled to qualified immunity from damages for civil liability in the seizure and arrest of Plaintiff Cong Huynh. Defendants assert that no violation of Plaintiff's constitutional rights occurred and that summary judgment is appropriate.

Defendants explain that Plaintiff was being questioned by Defendant Worden regarding Mr. Melcher's report that Plaintiff was claiming that Mr. Melcher's property was now his because Melcher was four days late in rent. Melcher also told Defendant Worden that the landlord had claimed that the property now belonged to him and demanded three months rent to be paid in advance. When Plaintiff refused to grant Mr. Melcher access to his property, Defendant Worden requested Plaintiff's identification so that he could prepare an investigative report regarding a possible theft which would then be referred to the prosecutor. Defendants further argue that under Washington law, RCW 9A.56.020(1)(a), "theft" includes "to wrongfully obtain or exert unauthorized control over the property or services of another or the value thereof, with intent to deprive him or her of such property or services.

Defendants explain further that when Defendant Worden asked for Plaintiff's identification, he repeatedly said "No." Defendant Worden then arrested Plaintiff for willfully hindering, delaying or obstructing a law enforcement officer in violation of RCW 9A.76.020, a gross

ORDER - 10

misdemeanor under RCW 9A.76.020(3).  Defendants argue that Defendant Worden's initial questioning of Plaintiff Huynh was an investigatory stop under Terry v. Ohio, 392 U.S. 1, 25-26 (1968), and was reasonable since, based upon Mr. Melcher's complaint, he had specific and articulable facts giving rise to a reasonable suspicion that Plaintiff had been involved in criminal activity.    Defendants conclude that with regard to Plaintiff's arrest, probable cause existed, and is a complete defense to an action under § 1983 arising out of the arrest.

    <u>Analysis</u>

    Plaintiff alleges that the Defendant police officer Worden violated his Fourth and Fourteenth Amendment rights by using excessive force in the course of executing an arrest, constituting an unreasonable seizure. To determine whether Defendant Worden is shielded by qualified immunity, this Court must first ask whether, taken in the light most favorable to the party asserting the injury, the facts alleged by Plaintiff show the officer's conduct violated a constitutional right.  Saucier, 533 U.S. at 201, 121 S.Ct. at 2151.

    Defendants instruct, citing Albright v. Oliver, 510 U.S. 266 (1994), that this claim should be analyzed under the more specific prohibitions against pretrial deprivations of liberty under the Fourth Amendment. The Fourth Amendment prohibits unreasonable searches and seizures. Therefore, when a plaintiff alleges excessive force by a police officer in the course of executing an arrest or an investigatory stop, he must show that the officer's conduct was objectively unreasonable in order to

prevail on this claim.  Graham v. Connor, 490 U.S. 386, 395-97, 109 S. Ct. 1865, 1872 (1989).  The Supreme Court in Graham recognized that the "right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it."  Id. at 397.

The Fourth Amendment permits police to detain an individual only if they have an articulable and reasonable suspicion that the individual has committed or is about to commit a crime.  United States v. Woods, 720 F.2d 1022, 1026 (9th Cir.1983).  To arrest an individual, police need more than a reasonable suspicion; they must have probable cause. Probable cause to arrest exists when "under the totality of the circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability that [the defendant] had committed a crime." United States v. Smith, 790 F.2d 789, 792 (9th Cir.1986).  "Violation of the Fourth Amendment requires an intentional acquisition of physical control."  Brower v. County of Inyo, 489 U.S. 593, 596, 106 S.Ct. 1378 (1989).

An arrest, then, is a seizure that is governed by the reasonableness standard of the Fourth Amendment.  The Court is satisfied that the uncontroverted facts show that Plaintiff was "seized" within the meaning of the Fourth Amendment during the September 16, 2005 investigatory stop and subsequent arrest.  In determining whether the degree of force is reasonable under the Fourth Amendment, courts carefully balance the nature and quality of the intrusion against the governmental interest at

stake.  Graham v. Conner, 490 U.S. 386, 396, 109 S.Ct. 1865, 1871, 104 L.Ed.2d 443 (1989).  Such a balancing "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."  Id.  The inquiry is "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them...."  Id.  109 S.Ct. at 1872, citing Scott v. United States, 436 U.S. 128, 137-39, 98 S.Ct. 1717, 1723-24, 56 L.Ed.2d 168 (1978).  Whether the amount of force used was reasonable is usually a question of fact to be determined by the jury. White v. Pierce County, 797 F.2d 812, 816 (9th Cir.1986).

As to the resolution of the first inquiry of the Saucier qualified immunity test, this Court believes the phrase "the facts alleged" allows this Court to consider the 'uncontradicted evidence' submitted by both parties in their summary judgment briefs as well as the facts alleged in Plaintiff's complaint to the extent that Plaintiff has appropriately supported them.[3]  Any "close calls" will be resolved in the light most favorable to the Plaintiff.  The facts alleged by Plaintiff, if true, suggest that the officer's conduct violated a constitutional right.

In answering the second question of the Saucier qualified immunity

---

[3]Defendants have objected to the excerpts from Mr. Huynh's deposition as not complying with the Court's Amended Scheduling Order. In the absence of any showing that such deposition excerpts are not under oath, this Court cannot, in fairness, disregard such testimony.

ORDER - 13

test, "a court is not restricted to the allegations of plaintiff's complaint." Martin v. City of Oceanside, 205 F.Supp.2d 1142, 1148 (2002). "Instead, because it is looking at events from the point of view of a reasonable police officer, a court addressing the second qualified immunity inquiry must necessarily refer to the evidence submitted by all parties." Id. "The court must review the evidence and determine whether the constitutional right allegedly violated was clearly established, and whether the officer could have reasonably but mistakenly believed his conduct did not violate that right." Id., citing Robinson v. Solano County, 278 F.3d 1007, 1015-16 (9th Cir.2002).

For summary judgment purposes, we must accept Plaintiff Huynh's version of the incident as true and determine whether Defendant Worden is nevertheless entitled to judgment as a matter of law. Assuming Huynh's version to be true, this Court cannot say as a matter of law that the officer reasonably suspected that Huynh had committed a crime of theft. Although Defendants focus the Court's attention to the arrest being made for resisting arrest and obstructing an officer, it appears the crime of theft was at the root of the investigatory stop.

Even if the parties agreed on the amount of force that was applied in this case, the question whether that force was reasonable cannot properly be resolved on summary judgment. In this case, the same factual disputes that underlie the detention and arrest issues are relevant to determining whether police used reasonable force. Viewing the evidence in the light most favorable to Huynh, a reasonable jury could conclude

ORDER - 14

that Huynh was allegedly taken down on the desk and/or floor in order to "control" him and had his head stepped on while on the floor and handcuffed solely for refusing to produce an identification.[4]

The Court finds a genuine issue of material fact exists as to whether the officer had probable cause to arrest and whether he used excessive force in arrest, precluding summary judgment.

With regards to the qualified immunity raised by Defendants, "[t]he relevant inquiry is whether a reasonable government official could have believed his conduct was lawful, in light of clearly established law and the information he possessed." Thorsted v. Kelly, 858 F.2d 571, 573 (9th Cir.1988), citing Anderson, 483 U.S. at 641, 107 S.Ct. at 3039. The threshold question, which is a question of law, is "[w]hether at the time of the challenged action the legal norm allegedly violated by an official was clearly established." Brady v. Gebbie, 859 F.2d 1543, 1556 (9th Cir.1988), cert. denied, 489 U.S. 1100, 109 S.Ct. 1577, 103 L.Ed.2d 943 (1989).

As the analysis above demonstrates, Huynh has raised a genuine issue of material fact whether the arrest and seizure of person violated Fourth Amendment principles that were clearly established at the time. The subsequent question is for the trier of fact. The trier of fact must decide "[w]hether a reasonable official would know that she is violating

---

[4]There is a dispute as to whether Plaintiff Huynh understood the officer was asking for "ID." There is evidence that Plaintiff Huynh's name appeared on a desk nameplate and Melcher identified Plaintiff to Defendant Worden as well.

that clearly established law." Id.  In the present case, the trier of fact must decide whether a reasonable officer would have realized that there was or was not probable cause for the arrest and that the amount of force used was appropriate under the totality of circumstances. Summary judgment with respect to Plaintiff's § 1983 claims arising out of alleged Fourth and Fourteenth Amendment violations is denied.

C.  Violation of Sixth Amendment

Plaintiff complains that Defendant Worden did not advise him he was under arrest.  Plaintiff also states that Defendant Worden did not ask him for his identification.  Ct. Rec. 31 at 2.  Instead, Plaintiff maintains Defendant Worden asked him for a "key."  Id.  Defendant Worden, on the other hand, states that he informed Plaintiff that he would be arrested if he didn't provide identification.  Ct. Rec. 23 at 3-4.

Analysis

In his complaint, Plaintiff alleges that Defendants' conduct violated his Sixth Amendment rights.  However, Plaintiff fails to fully argue the merits of this claim in his opposition.  The Sixth Amendment provides, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury ....".  The Sixth Amendment also provides the right to be informed of the nature and cause of the accusation, to confront adverse witnesses, to have compulsory process for obtaining witnesses, and to have the assistance of counsel.  Plaintiff has failed to identify with any specificity how Defendants allegedly violated his Sixth Amendment rights other than that

Defendant Worden did not tell him why he was under arrest.  Nor has Plaintiff proffered any argument in support of this claim in his opposition to Defendants' Motion For Partial Summary Judgment.  Based on the material facts that are in dispute, the Court denies the Defendants' summary judgment on Plaintiff's § 1983 claims arising out of alleged Sixth Amendment violations to the extent that the claim arises from Plaintiff's alleged failure to be advised of the reason for arrest.  Summary judgment is granted to Defendants in all other aspects of this claim.

D.   Violation of Eighth Amendment (Medical Treatment in Custody)

Plaintiff also argues in his Complaint that the Defendants violated his Eighth Amendment right by delaying access to medical care.  Plaintiff does not address his Eighth Amendment claim in his response to Defendants' Motion For Partial Summary Judgment.

Analysis

Estelle v. Gamble, 429 U.S. 97 (1976) stands for the proposition that the Eighth Amendment proscribes deliberate indifference to serious medical needs of prisoners by delaying access to medical care.

In considering the first step of Saucier's two-step qualified immunity analysis, the Court must determine whether plaintiff's constitutional right to be free of delay to medical access was violated by the conduct of the Defendant police officer on September 16, 2005, when Plaintiff sustained a serious injury to his face in the course of his arrest.  In reviewing the alleged facts as to the alleged Eighth

ORDER - 17

Amendment violation in the light most favorable to Plaintiff, as required, the Court finds that Plaintiff's right to be free of cruel and unusual punishment in the form of delayed medical assistance was not violated by Defendants.   Plaintiff asks the Court to infer a delay in obtaining medical assistance based on the fact that photographs were taken by police officers prior to his transport to the hospital emergency room.   Plaintiff's assertion of delay, however, is not born out by the facts.

More importantly, even accepting Plaintiff's argument on delay, the total time from injury until going to the hospital, according to the undisputed evidence, would have been approximately one hour or less. Such a relatively short time frame in the context of the facts of this case does not rise to a violation of the Eighth Amendment.   Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir.1980)(delay of six days in treating hepatitis may constitute deliberate indifference); Ortiz v. City of Imperial, 884 F.2d 1312 (9th Cir.1989)(deliberate indifference found where police knew of prisoner's condition and totally failed to treat it competently).   The Court finds that summary judgment with respect to Plaintiff's 42 U.S.C. § 1983 claim arising out of alleged Eighth Amendment violation is granted.

E.   State Law Claims Against All Defendants

Defendants assert that Plaintiffs did not strictly comply with RCW 4.96.020.   Plaintiffs respond that they have substantially complied with the statute because the Clerk of the City of Union Gap and the Municipal

Court of Union Gap are at the same physical address. Therefore, Plaintiffs conclude, service upon the Deputy Clerk of the Municipal Court is substantial compliance with the statute.

Defendants argue that Plaintiffs' substantial compliance theory ignores Washington case law requiring strict compliance with the statute. Citing King v. Snohomish County, 105 Wn.App. 857, 862 (2001), Defendants assert that substantial compliance is only available for the content of the claim, and not for the filing requirements. Defendants argue that filing requirements require strict compliance under Washington case law. Defendants state that neither the City of Union Gap nor Ms. Thompson has designated the Deputy Court Clerk for the Municipal Court of Union Gap as its agent. In view of the specific designation of Kathryn Thompson as the agent for service, Defendants contend that RCW 4.96.020's strict compliance requirements call for rejection of Plaintiff's substantial compliance theory. Further, Defendants argue, the applicable statute of limitations bars the refiling of Plaintiffs' state law torts, i.e. false arrest, false imprisonment, and assault and battery.

The Supreme Court in King v. Snohomish County, 146 Wash.2d 420, 47 P.3d 563 (2002)[5] explained that courts cannot ignore policy considerations underlying the waiver doctrine. The Supreme Court stated:

> We have held that a defendant may waive an affirmative defense if either (1) assertion of the defense is inconsistent with defendant's prior

---

[5]This case overruled *King v. Snohomish County*, 105 Wn.App. 857 (2001) cited by Defendants in their Reply Memorandum, Ct. Rec. 39 at 8, which raises reliability of its use by the Court.

ORDER - 19

> behavior or (2) the defendant has been dilatory in
> asserting the defense. Lybbert v. Grant County, 141
> Wash.2d 29, 39, 1 P.3d 1124 (2000). See also French
> v. Gabriel, 116 Wash.2d 584, 806 P.2d 1234 (1991).
> In Lybbert we explained, "the doctrine of waiver is
> sensible and consistent with ... our modern day
> procedural rules, which exist to foster and promote
> 'the just, speedy, and inexpensive determination of
> every action.' " Lybbert, 141 Wash.2d at 39, 1 P.3d
> 1124 (quoting CR 1). The doctrine is designed to
> prevent a defendant from ambushing a plaintiff
> during litigation either through delay in asserting
> a defense or misdirecting the plaintiff away from a
> defense for tactical advantage. Lybbert, 141
> Wash.2d at 40, 1 P.3d 1124.

King, 146 Wash.2d at 424.

Defendants timely pled the claim filing defense in their Answer to the Plaintiffs' Complaint. Defendants also have not ambushed Plaintiffs through delay or misdirection. Defendants did not waive the defense and unequivocally assert the defense. This Court finds, however, that because the Washington Supreme Court has not yet addressed the issue, it appears that substantial compliance is well established in Washington and should be applied when determining whether a party has met the statutory requirements of RCW 4.96.020. Moreover, the cases cited to support its position that strict compliance with RCW 4.96.020 is necessary are also distinguishable. For instance, where time requirements are concerned, courts have held that failure to comply with a statutorily set time limitation cannot be considered substantial compliance with the statute.

In Medina v. Public Utility Dist. No. 1 of Benton County, 147 Wash.2d 303, 53 P.3d 993 (2002), the Washington Supreme Court held that "where time requirements are concerned", a plaintiff must strictly comply

ORDER – 20

with the claim filing statute.  Medina, 147 Wash.2d at 317, 53 P.3d 993.
But here, it is undisputed that Huynh complied with the time limits of
the claim filing statute.  He simply presented it to the Deputy Clerk of
the municipal court rather than the City Clerk of the Defendant City,
both located at the same physical address in Union Gap.  In sum, because
Huynh complied with the statutory time requirement but served the wrong
clerk, his failure to serve it on the proper agent of service is arguably
not fatal under well-settled case law.[6]  The Court finds that this issue
cannot be resolved at the summary judgment stage.

   **IT IS ORDERED**:

   1. Defendants' motion for partial summary judgment is **GRANTED in
part** and **DENIED in part**.

   (a) Defendant City of Union Gap's Motion For Partial Summary
Judgment regarding all of Plaintiffs' § 1983 claims is **GRANTED.**

   (b) Defendant Worden's Motion For Partial Summary Judgment regarding

---

   [6]*Union Bay Pres. Coalition v. Cosmos Dev. & Admin. Corp.*, 127
Wash.2d 614, 620, 902 P.2d 1247 (1995) (substantial compliance may apply
in cases involving service of process); *In re Saltis*, 94 Wash.2d 889,
896, 621 P.2d 716 (1980) (applies substantial compliance to subject
matter jurisdiction service requirements); *Duschaine v. City of Everett*,
5 Wash.2d 181, 105 P.2d 18 (1940) (literal compliance with legislative
and charter provisions respecting the presentation of claims for tort
against a municipality is not demanded; only substantial compliance is
required); *Davis v. City of Seattle*, 37 Wash. 223, 79 P. 784 (1905)
(purpose of claim filing statute was met so notice of claim found
sufficient although not in strict compliance with statute); *Durham v.
City of Spokane*, 27 Wash. 615, 68 P. 383 (1902) (sufficient compliance
with notice claim statute where claim was presented to city clerk instead
of city council).

Plaintiff's § 1983 claims arising out of alleged Fourth and Fourteenth[7] Amendment violations (unlawful seizure and arrest) is **DENIED.**

(c) Defendant Worden's Motion For Partial Summary Judgment regarding Plaintiff's § 1983 claims arising out of alleged Sixth (failure to advise of reasons for arrest) and Fourteenth Amendment violations is **DENIED.**

(d) Defendant Worden's Motion For Partial Summary Judgment regarding Plaintiff's § 1983 claims arising out of alleged Eighth (medical care) and Fourteenth Amendment violations is **GRANTED** except as otherwise set forth above.

(e) Defendants' Motion For Partial Summary Judgment regarding Plaintiff's state law claims for false arrest, false imprisonment, and assault and battery is **DENIED.**

The District Court Executive is directed to file this Order and provide copies to counsel.

**DATED** this 27th day of May, 2009.

s/Lonny R. Suko
_____
LONNY R. SUKO
UNITED STATES DISTRICT JUDGE

---

[7]Plaintiffs' Complaint pleaded the Fourteenth Amendment with every constitutional violation claim.

ORDER - 22